# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| FREDRICK DEWAYNE HARRELL<br>    LA. DOC #121643 | CIVIL ACTION NO. 3:13-cv-2345 |
| VS. | SECTION P |
| | JUDGE DONALD E. WALTER |
| WARDEN JOHN SMITH, ET AL. | MAGISTRATE JUDGE KAREN L. HAYES |

### REPORT AND RECOMMENDATION

*Pro se* plaintiff Fredrick Dewayne Harrell, proceeding in forma pauperis, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on July 25, 2013. Plaintiff is an inmate in the custody of Louisiana's Department of Corrections. He is incarcerated at the Pine Prairie Correctional Center; however, he complains about the conditions and circumstances he experienced when he was incarcerated at the Tensas Parish Detention Center (TPDC), Waterproof, Louisiana, in the summer of 2013.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.  For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

### *Statement of the Case*

In his original complaint, plaintiff alleged that he witnessed the use of excessive force by prison guards against other inmates; that he witnessed inmate on inmate violence, including sexual assaults;  and that he witnessed murder and suicide during the period of time he was incarcerated at the TPDC.  He then claimed that he suffered unspecified injury to his eyes, legs,

and upper torso because the prison lacked adequate security.  He prayed for compensatory damages and an injunction seeking unspecified relief from Tensas, Jackson, Winn, and Richland Parishes.  He sued TPDC Warden John Smith, Tensas Parish Sheriff Ricky Jones, and the Tensas Parish Police Jury.

On September 30, 2013, plaintiff was ordered to amend his complaint.[1]  On October 30, 2013, he provided an amended complaint.  Therein he alleged that his current place of confinement has an inadequate law library that cannot provide "the proper cases and information legally to submit in support with my case."

Thereafter, plaintiff alleged that Assistant Warden Fred Schoonover, who was not mentioned in his original complaint, ordered the TPDC medical staff to refrain from recording plaintiff's "doctor visit" wherein he sought treatment for injuries sustained on July 5, 2013.

He then claimed that on July 9, 2013, he was beaten by three inmates.  He submitted an "emergency request" to Sgt. Ray but then "never heard another word of it."  Thereafter, plaintiff was called out for blood work on July 24, 2013.  On that day he advised the nurse on duty about the incident and was given Tylenol for pain.  A week later, on July 30, 2013, he was transferred

---

[1] The order directing plaintiff to amend noted, "Plaintiff raises general claims concerning the conditions of confinement at TPDC but he does not allege specific fault on the part of the Defendants. Plaintiff has also not described the injuries he allegedly sustained, nor stated the circumstances surrounding his claim.  He should amend his complaint to allege what EACH defendant did to violate his Constitutional Rights, the place and date that the event occurred and he should describe the injury he sustained in more specific detail.

\*        \*        \*

Further, plaintiff seeks unspecified injunctive relief against four Louisiana Parishes; however, these Parishes were not named as defendants in his law suit. Plaintiff should amend his complaint to provide a more detailed description of the injunctive relief he seeks and he should specify the party or parties to be enjoined." [Doc. 10]

to his present place of confinement, the Pine Prairie Correctional Center.

He claimed that on July 9, 24, 27, and 30 his life was "verbally threatened" by Warden Smith and Assistant Warden Schoonover.  He also claimed that on those same dates Smith and Schoonover denied him medical attention for a "swollen left eye, thigh and hip area of right leg and ... upper torso" all of which were caused by the July 9th assault on him perpetrated by three inmates.  He faulted Warden Smith for failing to protect him from danger "when they knew what was going on in those dormitories at all times."

He claimed that Smith and Schoonover threatened him with bodily harm on June 27, July 3, and July 30, if he did not cease his complaints against them and other corrections officers.  On July 30 he was placed in lock down and then transferred to his present place of confinement.

Plaintiff also requested dismissal of the suit as to Major Walker and Captain Bass; however, neither individual was identified as a defendant in his original complaint.  Plaintiff claimed that the Sheriff and Police Jury of Tensas Parish were liable "... because they are notified each time something goes down in these facilities."  He further alleged that both the Sheriff and Police Jury "advice the nurse and all facility employees ... not to record or log in any such acts ... unless if inmate has to visit emergency room."

Finally, plaintiff alleged that he was confined in lock down on July 30 by Warden Smith and Assistant Warden Schoonover "... for filing complaints against them and their facility saying that their orders came from the Sheriff himself..."

### Law and Analysis

### 1. Screening

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis.*  As a

3

prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (per curiam). Because he is proceeding *in forma pauperis,* his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Here plaintiff implies that he was unable to adequately amend his complaint due to deficiencies in the Pine Prairie law library. However, plaintiff was not instructed to provide a memorandum of law in support of his claims; indeed, he was specifically instructed to support his conclusory claims with statements of fact. As is shown more fully below, plaintiff has simply failed to allege facts sufficient to warrant relief.

### 2. Failure to Protect

Plaintiff's right to protection from inmate violence is governed by the Eighth Amendment's prohibition of cruel and unusual punishment and is measured by the standard of subjective deliberate indifference enunciated by the Supreme Court in *Farmer v. Brennan,* 511

4

U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  Under that standard, a prison official is not

liable for failing to protect an inmate unless the official "knows of and disregards an excessive

risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128

L.Ed.2d 811 (1994).  In order to prevail, plaintiff must establish that the defendant officials:

(1) were aware of facts from which the inference could be drawn that a substantial risk of serious

harm existed and, (2) actually drew the inference. *Farmer*, 511 U.S. at 837. Negligent inaction

can never be the basis of a failure to protect claim. *Farmer*, 511 U.S. at 835.

     The legal conclusion of deliberate indifference must rest on facts clearly evincing

"wanton" actions on the part of defendants. *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th

Cir.1985).  In *Smith v. Wade*, 461 U.S. 30, 39 n. 8, 103 S.C. 1625, 1632 n. 8, 75 L.Ed.2d 632

(1983), the Court approved the following definition of wanton:  "'Wanton means reckless –

without regard to the rights of others ... Wantonly means causelessly, without restraint, and in

reckless disregard of the rights of others. Wantonness is defined as a licentious act of one man

towards the person of another, without regard to his rights; it has also been defined as the

conscious failure by one charged with a duty to exercise due care and diligence to prevent an

injury after the discovery of the peril, or under circumstances where he is charged with a

knowledge of such peril, and being conscious of the inevitable or probable results of such

failure.' 30 <u>American and English Encyclopedia of Law</u> 2-4 (2d ed. 905) (footnotes omitted)."

     Nothing in plaintiff's complaint suggests that the defendants were guilty of deliberate

indifference with regard to the July 9, 2013, altercation between plaintiff and his fellow inmates.

Nothing suggests that these defendants were aware of facts from which the inference could be

drawn that a substantial risk of serious harm existed.  In any event, even assuming that the

defendants were aware of such facts, nothing suggests that they actually drew such an inference.

Additionally, in considering whether defendants have failed to protect an inmate, Courts must look to whether there was a "substantial" or "pervasive" risk of harm preceding the assault. A "pervasive" risk of harm may not ordinarily be shown by pointing to a single or isolated incident. *See e.g. Falls v. Nesbitt*, 966 F.2d 375, 378 (8th Cir.1992) (holding a "pervasive risk" is something more than a single incident and something less than a riot). Other than conclusory allegations, plaintiff  offered nothing to suggest that the attack on him was at all foreseeable. Inmates are unlikely to recover under Section 1983 for injuries sustained in an isolated assaults unless they can prove that the authorities either "set him up" for the assault or deliberately ignored his repeated and clearly well-founded claims of danger.  There are no allegations that the defendants set plaintiff up for the attack or ignored specific claims of danger prior to the  attack.

The facts alleged do not demonstrate that the defendants inferred that plaintiff was at risk of an event such as the one complained of.  Further, it does not appear that the attack was a foreseeable consequence of any violations of prison policy.

In short, plaintiff, in his original complaint, alleged in conclusory fashion that the defendants were deliberately indifferent to his welfare and safety.  This defect was identified and plaintiff was instructed to amend his complaint to provide the factual basis for his claim. His amended complaint once again alleged only conclusory allegations without factual support. Therefore, plaintiff's failure to protect claim fails to state a claim for which relief may be granted.

### 3. Medical Care

Plaintiff also complains that he was denied prompt and adequate medical care for the

injuries he sustained in the altercation with his fellow inmates.  The constitutional right of a convicted prisoner to safe conditions of confinement and prompt and adequate medical care is based upon the Eighth Amendment's prohibition of cruel and unusual punishment. Rights guaranteed under the Eighth Amendment are violated only if the defendants act with deliberate indifference to a substantial risk of serious harm which results in injury. Deliberate indifference requires that the defendants have subjective knowledge of the risk of harm.  Mere negligence or a failure to act reasonably is not enough. The defendants must have the subjective intent to cause harm.  *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Thus, in order to establish an actionable constitutional violation, a plaintiff must allege facts tending to establish that the defendants were deliberately indifferent to his serious medical needs and safety.  *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). A showing of deliberate indifference with regard to medical treatment requires the inmate to submit evidence that prison officials " 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' " *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citation omitted). Plaintiff's pleadings fall far short of alleging facts sufficient to establish deliberate indifference on the part of any of the defendants  identified in his pleadings. As a matter of fact, it is manifestly obvious that plaintiff simply disagrees with the decisions of the health care professionals who were responsible for his care and treatment.  Plaintiff's disagreement with their treatment choices falls far short of establishing deliberate indifference since mere disagreement with medical diagnosis or treatment does not state a claim under the Eighth Amendment. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997), citing *Young v.*

*Gray*, 560 F.2d 201, 201 (5th Cir.1977); *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir.1985).

Furthermore, as previously noted, deliberate indifference is not the equivalent of negligence; deliberate indifference "describes a state of mind more blameworthy than negligence." *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Under the deliberate indifference standard, it is not sufficient that defendants should have known of a substantial risk; they must have actual knowledge of the risk and must thereafter have ignored it.  In other words, a civil rights  plaintiff must allege and prove that each of the defendants knew of and then disregarded an <u>excessive risk</u> of injury to him, and,  that they were both aware of the facts from which the inference could be drawn that a <u>substantial risk of serious harm existed</u>, <u>and that they drew that</u> inference. *Id.* at 837.

Here plaintiff admitted that he was treated after the incident in question. He complained, however, that medical staff made no record of their treatment of him. Further, plaintiff described his medical condition after the altercation as  "swollen left eye, thigh and hip area of right leg and ... upper torso" – conditions which do not suggest that there  a "substantial risk of serious harm existed."  Thus,  plaintiff's failure to allege and demonstrate deliberate indifference warrants dismissal of his complaint as frivolous and for failing to state a claim for which relief may be granted.

### 4. Retaliation

Plaintiff claimed that he was confined in lock down on July 30th by Warden Smith and Assistant Warden Schoonover "... for filing complaints against them and their facility saying that their orders came from the Sheriff himself..." He thus implies that he was a victim of retaliation. To prevail on the claim for retaliation under section 1983, a prisoner must prove (1) the exercise

of a specific constitutional right; (2) the defendants' intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation, which, in this context means  that, but for the retaliatory motive, the complained of incident would not have occurred. *McDonald v. Steward*, 132 F.3d 225, 2331 (5th Cir.1998). The prisoner must produce direct evidence of motivation, or, the more probable scenario, allege a chronology of events from which retaliation may be plausibly inferred. *Woods v. Smith*, 60 F.3d 1161 (5th Cir.1995).  The plaintiff must allege more than just his personal belief that he is the victim of retaliation.  *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.1999).  Plaintiff was placed in lock down on July 30th and shortly thereafter he was transferred to his present place of confinement.  The scenario alleged does not establish causation.  Indeed, it is more likely than not that his confinement in lock down was in anticipation of his upcoming transfer and not an act of retaliation.

### 5. Threats

Finally, plaintiff complained of threats of physical violence from the Warden and his Assistant.  However, verbal threats, without more, do not support a claimed constitutional violation. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir.1983).  In other words, allegations of mere verbal abuse by prison guards simply do not give rise to a cause of action under §1983. *Bender v. Brumley*, 1 F.3d 271, 274 n. 4 (5th Cir.1993); *Siglar v. Hightower*, 112 F.3d 191 (5th Cir.1997.

In short, plaintiff has failed to state a claim for which relief may be granted.

### Conclusion and Recommendation

Therefore,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED**

9

**WITH PREJUDICE** for failing to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).

In Chambers, Monroe, Louisiana, December 9,  2013.


KAREN L. HAYES
U. S. MAGISTRATE JUDGE

10